IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NEHEMIAH LORD,<br><br>    Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Nehemiah Lord ("Mr. Lord") a living, breathing consumer, brings this action on an individual basis, against Defendant Experian Information Solutions, Inc. ("Experian") and Defendant Equifax Information Services, LLC ("Equifax") and states as follows:

### INTRODUCTION

1. In 1970, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), requiring consumer reporting agencies ("CRAs") to implement and utilize reasonable procedures "to assure **maximum possible accuracy**" of the personal, private, and financial information that they compile and

sell about individual consumers. 15 U.S.C. § 1681e(b) (emphasis added).

2. In doing so, Congress recognized that:

[the] banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

15 U.S.C. § 1681(a)(1).

3. Accordingly, the FCRA helps ensure that CRAs "exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4). CRAs' procedures should be "reasonable," i.e., "fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of [] information." 15 U.S.C. § 1681(b).

4. In 2024, a unanimous Supreme Court—discussing the "importance of accuracy in credit reporting"—agreed that, today, "[a] credit report can determine everything from whether a person can secure a credit card, purchase a home, win a new job, or start a small business." *Department of Agriculture Rural Development Rural Housing Service v. Kirtz*, 601 U.S. ___ (2024). The FCRA is meant to ensure that such consumers are given a fair shake, but *Kirtz* cited findings that "over 34%

of consumers [] were able to identify at least one error in their credit reports." *Id.* The Court agreed that "[m]istakes like these can lead lenders to insist on higher interest rates or other terms that make it difficult or impossible for consumers to obtain a mortgage, auto loan, student loan, or other credit." *Id.* (internal quotations omitted).

5.  In this action, Defendants falsely reported to Plaintiff's potential creditors that Plaintiff was deceased, causing Plaintiff's credit score to effectively drop to zero. Plaintiff, who is alive, seeks actual, statutory, and punitive damages, costs and attorney's fees from Defendants for their willful and/or negligent violations of the FCRA, 15 U.S.C. § 1681, *et seq*.

## PARTIES

6.  Nehemiah Lord is a natural person residing in Atlanta, Georgia, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

7.  Experian is a corporation with a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626, and is authorized to do business in the State of Georgia, including within this District. Experian can be served through its registered agent, C T Corporation System, at 330 North Brand Boulevard, Glendale, California 91203. Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).

1. Equifax is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of Georgia, including within this District. Equifax can be served through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).

## JURISDICTION AND VENUE

8. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

10. In or around early January 2025, Plaintiff received a Credit Karma alert email that someone had applied for a car loan with NASA Federal Credit Union.

11. Plaintiff drives a CAR NAME, which he obtained financing for from Pentagon Federal Credit Union ("PenFed") and purchased on or about May 25, 2021.

- 5 -

12. Plaintiff has not shopped around for cars at dealerships since then. Accordingly, the email was cause for concern, and it led Plaintiff to review his credit reports and existing auto loan.

13. Plaintiff was advised by Experian that he was unscored, because one of his accounts was reported as deceased.

14. Also in January 2025, Plaintiff learned that Equifax was also reporting Plaintiff as deceased, and had told Citibank, N.A., Plaintiff's creditor, that Plaintiff was deceased.

15. Around that time, Plaintiff informed Experian that he was in fact alive, but upon information and belief, Experian told Plaintiff that he would have to call the bank to tell them to stop reporting him as deceased.

16. Upon information and belief, Social Security Administration data confirms that Plaintiff is alive and does not indicate that he is deceased.

17. Plaintiff received a letter dated February 11, 2025, confirming Plaintiff's correct date of birth, and stating that Plaintiff "**is not Deceased** according to Social Security records" (emphasis added).

18. Around that same time, PenFed advised Plaintiff, via phone, that PenFed was reporting Plaintiff as deceased. PenFed told Plaintiff to expect a letter.

19. Plaintiff later received a letter from PenFed dated January 5, 2025. The letter (the "Condolence Letter") expressed PenFed's condolences for the death of Plaintiff, Nehemiah Lord.

20. The Condolence Letter listed Plaintiff's outstanding PenFed accounts and requested to resolve them. These accounts included a Used Auto Loan in the amount of $8,385.46; a Power Cash Rewards in the amount of $10,135.54; and a Personal Loan in the amount of $10,785.72.

21. On January 9, 2025, Plaintiff applied to Wells Fargo for an Active Cash Visa Card and was denied. That card would have offered 2% cash back on purchases, a benefit Plaintiff does not currently enjoy on any of his cards. Upon information and belief, Wells Fargo denied Plaintiff, upon information and belief due to the false deceased mark.

22. On that same date, Plaintiff filed a dispute with Experian, notifying them, again, that he was alive. On the following day, January 10, 2025, Plaintiff called Experian, notifying them that he is alive and disputing the account.

23. On January 24, 2025, Plaintiff received a letter from American Express, stating that his Blue Business Cash account was suspended. Two other American Express cards were ultimately cancelled: his American Express Gold business card, as well as his personal American Express Gold card. These decisions occurred

because of the deceased reporting. All three of Plaintiff's American Express cards remain cancelled.

24. As of February 10, 2025, Plaintiff was still reported as deceased on his Experian report.

25. As of February 2, 2025, Equifax was still reported as deceased on his Equifax report.

26. Plaintiff is planning on purchasing a home with his fiancée, but the false reporting is preventing him from doing so, because Plaintiff knows he will not be able to get a mortgage due to being unscored by Experian and Equifax as a result of the "deceased" mark.

27. Plaintiff is also frustrated at how the deceased remark is hindering his ability to grow his Amazon business. Plaintiff cannot do business marketing because his business credit cards, which he needs to pay for the marketing, were cancelled.

28. As a result of Defendants' conduct, action, and inaction, Plaintiff has experienced headaches, anxiety, sleeplessness, and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

29. Plaintiff served in the United States Navy from 2003 through 2011. Plaintiff was involved in Hurricane Katrina rescue and relief efforts. Plaintiff has

post-traumatic stress disorder from his time in service. Being reported as deceased, and the resulting economic and other consequences thereof, have aggravated Plaintiff's PTSD, and the PTSD has exacerbated his emotional distress.

30. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendants. At all times pertinent hereto, Defendants' conduct, as well as that of their respective agents, servants, and/or employees, was intentional, willful, and/or reckless.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

31. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

32. Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

33. Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to

be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

34. Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Against Defendant Experian Only)

35. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

36. Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct reasonable reinvestigation(s) of Plaintiff's dispute(s) and by failing to maintain reasonable procedures to investigate Plaintiff's dispute(s).

37. Experian's violations were willful, rendering each CRA Defendant liable for actual and/or statutory damages, as well as punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. Alternatively, these violations were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

38. Plaintiff is entitled to recover attorneys' fees and costs from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendants negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED THIS: February 27, 2025

<u>By: /s/ Misty Oaks Paxton</u>
Misty Oaks Paxton, Esq.
THE OAKS FIRM
3895 Brookgreen Pt.
Decatur, GA 30034
Tel: (404) 500-7861
Email: attyoaks@yahoo.com

Noah Kane NY Bar No.: 6009682
*(Pro Hac Vice Forthcoming)*
68-29 Main Street

Flushing, NY 11367
T: (518) 375-3963
F: (718) 715-1750
E: nkane@consumerattorneys.com

*Attorneys for Plaintiff,*
*Nehemiah Lord*